UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

IGOR SHAPOSHNIKOV,           :
    Petitioner                :
                              :
    v.                        : CASE NO. 1:16-CV-1871
                              :
DAVID ORTIZ,                 :   (Judge Caldwell)
    Respondent                :


*M E M O R A N D U M*

## I.   *Introduction*

The pro se petitioner, Igor Shaposhnikov, is an inmate at the Federal

Correctional Complex, Allenwood Low, in White Deer, Pennsylvania.  Petitioner was

formerly incarcerated at FCI Fort Dix, in New Jersey.  He has filed a habeas petition under

28 U.S.C. § 2241 seeking reinstatement of 40 days' good conduct time ("GCT").  The GCT

was disallowed after FCI Fort Dix prison staff discovered contraband in the 12-person cell

to which Petitioner was assigned.  Petitioner claims that he was denied due process

during the disciplinary hearing held at FCI Fort Dix that resulted in the disallowance of his

GCT.  Specifically, he claims that there was insufficient evidence to find that he was in

possession of the contraband.

Petitioner named as respondent, David Ortiz, the warden at FCI Fort Dix.[1]

Respondent opposes Shaposhnikov's petition on two grounds.  First, Petitioner has not

exhausted his administrative remedies, so we should not reach the merits.  Second, even

if we do reach the merits, the petition fails anyway because there was some evidence to

---

[1]   We note, however, that the proper respondent should have been the warden at Allenwood,
Petitioner's immediate custodian.  *See Cruz v. Grondolski*, No. 16-CV-1802, 2016 WL 7374877, at
*2 (M.D. Pa. Dec. 20, 2016)(Caldwell, J.).

support the disciplinary finding by way of Petitioner's constructive possession of the contraband.

II.   *Background*

In 2015, Petitioner was serving his sentence in a 12-person cell at FCI Fort Dix.  (Doc. 1, 2241 petition, at ECF p. 1).  On the morning of August 24, 2015, prison staff conducted a "shakedown" of the cell and discovered "three shanks, a cell phone, and a screwdriver in a hole in the sheet rock . . . ."  (Doc. 8 at ECF p. 2; Doc. 8-2 at ECF p. 20, incident report; Doc. 8-2 at ECF p. 26, photo sheet; Doc. 8-2 at ECF p. 27, memorandum from the correctional officers who conducted the search).  The hole in the sheetrock was nearest bed 3L.  (Doc. 8-2 at ECF p. 20, incident report).

None of the inmates assigned to the cell claimed responsibility for the contraband, (Doc. 8-2 at ECF p. 21), so each of them, including Petitioner, was issued an incident report for violation of Bureau of Prisons (BOP) Code 108, "possession, manufacture, introduction of a hazardous tool."  (Doc. 8-2, ECF at pp. 20, 26).  As Petitioner describes it, he "and all other inmates residing in the twelve-man cell were taken to the lieutenant's office and were issued incident reports as a result of weapons found in the cell."  (Doc. 1 at ECF p. 1).

Petitioner was issued "Incident Report Number 2753487."  (Doc. 8-2 at ECF p. 18).  In a response to the investigating officer, Petitioner stated: "I know nothing about weapons or phone in the room."  (Doc. 8-2 at ECF p. 21).

On September 9, 2015, Petitioner's disciplinary hearing was held.  (Doc. 8-2 at ECF p. 18).  At the hearing, Petitioner stated that he had never seen the contraband

before, that he was "not aware they were in the room," and that he had "been in the room for four or five months." (Doc. 8-2, at ECF p. 18).

The Discipline Hearing Officer (DHO) found that Petitioner had committed the prohibited act. The decision was based on the evidence provided, which included the written report by one of the correctional officers who conducted the search. (Doc. 8-2 at ECF p. 19). The DHO imposed sanctions on Petitioner, including a disallowance of 40 days of GCT. (*Id.*) The DHO report was prepared on September 22, 2015, Petitioner was provided a copy of the report on September 30, 2015, and advised that he had the right to appeal through the administrative remedy procedure within twenty calendar days. (*Id.*)

On Friday, October 2, 2015, Petitioner initiated efforts to appeal the DHO's decision by filing Administrative Remedy Request Number 837708 at FCI Fort Dix, which is considered the "institution level." (Doc. 8 at ECF p. 7). The appeal was rejected that same day because Petitioner incorrectly filed the appeal at the institution level; it should have been filed at the regional level. (*Id.* at ECF p. 8). Petitioner, on the other hand, claims that he inquired with his correctional counselor, Mr. Lee, to determine how he should appeal the DHO's decision. (Doc. 1 at ECF p. 6). Petitioner avers that Mr. Lee instructed him to complete a BP-9 form and return it to him the next day.[2] (*Id.*) Petitioner states that he did as instructed. (*Id.*) Petitioner claims that his appeal was rejected at the institution level three days later because it was filed at the incorrect level.[3] (*Id.*)

---

[2] A BP-9 form is used to file a formal written Administrative Remedy Request at the institution level; the BP-9 is reviewed and resolved by the institution's warden. 28 C.F.R. 542.14; 28 C.F.R. 542.15(a).

[3] Attachments filed by Petitioner include a printout of a rejection notice issued by the Administrative Remedy Coordinator with respect to the Administrative Remedy Request Petitioner filed on October 2, 2015. (Doc. 1-1 at ECF p. 4). That printout indicates that the rejection was issued on October 2, 2015. (*Id.*) It is unclear if Petitioner is contesting the date of issuance, or is

On October 26, 2015, Petitioner filed Administrative Remedy Request Number 837708 at the BOP's Northeast Regional Office. (Doc. 8 at ECF p. 8). Petitioner affirms under penalty of perjury that he used a BP-10 form[4] to make this submission.[5] (Doc. 1 at ECF p. 6, penalty-of-perjury declaration). On November 4, 2015, the Administrative Remedy Coordinator at the Northeast Regional Office rejected Petitioner's appeal because it was not submitted "on the proper form." (Doc. 1-1 at ECF p. 5).

The rejection notice instructs the Administrative Remedy Coordinator to "circle" either "BP-9," "BP-10," or "BP-11" to indicate to Petitioner which is the proper form on which to submit an appeal at the regional level. (*Id.*) None of the listed options were circled. (*Id.*) The rejection notice further directs that "you may resubmit your appeal in proper form within 10 days of the date of this rejection notice." (*Id.*) The rejection notice, however, does not indicate which form Petitioner submitted, why it was not the proper one, or which form would be proper.[6] According to the rejection notice, Petitioner had until November 14, 2015, to resubmit Administrative Remedy Request Number 837708.

On November 16, 2015, Petitioner again appealed the DHO's decision to disallow his 40 days' GCT. (Doc. 8 at ECF p. 8). This time, he appealed to the Northeast

---

instead indicating that he did not become aware of the Friday, October 2, 2015, rejection until prison staff delivered the rejection notice to him three days later on Monday, October 5, 2015.

[4] A BP-10 form is used to file an Administrative Remedy Request at the regional level. 28 C.F.R. 542.15(a).

[5] Petitioner indicates that "I sent the BP-10 for[m] to Region." (Doc. 1 at ECF p. 6). Petitioner does not indicate, however, on which date he sent the BP-10 form to the Northeast Regional Office or whether this submission was filed under Administrative Remedy Request Number 837708 or Administrative Remedy Request Number 842681.

[6] We note that neither Petitioner nor Respondent has provided us with copies of Petitioner's Administrative Remedy Requests. We further note that rejection notices, which were provided by Petitioner, and BOP computerized "SENTRY" records, which were provided by Respondent, do not indicate which form Petitioner actually submitted his Administrative Remedy Request upon; they simply state that the form he submitted was not the "proper" one.

Regional Office using a separate Administrative Remedy Request Number: 842681. (*Id.*) On November 18, 2015, the Administrative Remedy Coordinator rejected Petitioner's appeal for again being submitted on the improper form. (*Id.*) Again, there is no indication which form Petitioner actually submitted or why it was rejected as "improper." Petitioner was instructed to resubmit Administrative Remedy Request Number 842681 by November 28, 2015. (*Id.*)

Also on November 18, 2015, Petitioner refiled Administrative Remedy Request Number 837708 at the regional level.[7] (Doc. 8-2 at ECF p. 4) The next day, November 18, 2015, the Administrative Remedy Coordinator rejected Petitioner's resubmission of Administrative Remedy Request Number 837708. (*Id.*) The corresponding rejection notice indicates that the resubmission was due by November 14, 2015, and, as a result, the resubmission was rejected as untimely. (*Id.*) Petitioner avers that he was hindered from timely resubmitting his appeal because his correctional counselor was dilatory in providing Petitioner with the correct Administrative Remedy Request form:

> I sent the BP-10 for[m] to Region. It was returned stating it was
> the wrong form. They stated I have 10 days to re-appeal from
> the date it was sent. However, by the time I obtained the right
> form from my counselor it was another four days. Region

---

[7] Respondent states that Petitioner refiled Administrative Remedy Request Number 842681 on November 18, 2015, citing a declaration made by Jonathan Kerr, an attorney for FCI Allenwood. (Doc. 8 at ECF p. 8; Doc. 8-2 at ECF p. 3). That declaration, however, indicates that Petitioner refiled Administrative Remedy Request Number 837708 that day instead. (Doc. 8-2 at ECF p. 4 ¶ 5). We assume that Jonathan Kerr's declaration is correct and that Respondent simply transcribed the wrong Administrative Remedy Request Number into his response brief.

> claimed it received my appeal after the 10 days. Therefore it
> was time-barred.[8]

(Doc. 1 at ECF p. 6). Regardless, the rejection notice instructed Petitioner to resubmit Administrative Remedy Request Number 837708 by November 29, 2015. (Doc. 1-1 at ECF p. 6). The rejection notice further instructed that, to be considered on its merits, Petitioner must include with his resubmission a memorandum from an appropriate staff member indicating Petitioner was not at fault for filing past the deadline. (*Id.*)

Subsequently, on December 8, 2015, Petitioner resubmitted Administrative Remedy Request Number 842681 at the regional level. (Doc. 8-2 at ECF p. 4 ¶ 6). On December 14, 2015, the Administrative Remedy Coordinator rejected that resubmission as untimely because it was filed past the November 28, 2015, deadline for that Administrative Remedy Request Number. (*Id.*)

Finally, Petitioner appealed the regional rejection of Administrative Remedy Request Number 837708 to the BOP's General Counsel at the Central Office in Washington, D.C. (Doc. 8-2 at ECF p. 4). Respondent contends that Petitioner did not submit his appeal to the Central Office until August 30, 2016.[9] (Doc. 8 at ECF p. 9). Petitioner, on the other hand, asserts that he sent his appeal to the Central Office in January 2016, (Doc. 9 at ECF p. 2, reply brief), but that it got "lost in the mail." (Doc. 1 at ECF p. 6).[10]

---

[8] Again, Petitioner does not indicate the date that he "re-appealed" the rejection of his initial appeal to the Northeast Regional Office or whether this was a resubmission filed under Administrative Remedy Request Number 837708 or Administrative Remedy Request Number 842681.

[9] This contention is supported by the rejection notice issued by the Administrative Remedy Coordinator at the Central Office, which states that the "date received" for Administrative Remedy Request Number 837708 was August 30, 2016. (Doc. 9-1 at 2).

[10] It is unclear whether Petitioner claims that the mailing he sent in January 2016 was eventually found and delivered to the Central Office in August 2016, or, alternatively, if the mailing was never

In any event, on September 19, 2016, the Administrative Remedy Coordinator issued a rejection of Petitioner's appeal because Petitioner had failed to "follow directions provided on prior rejection notices." (Doc. 9-1 at ECF p. 2). Presumably, this rejection notice is referring to Petitioner's failure to resubmit his regional appeal of Administrative Remedy Request Number 837708 to the Northeast Regional Office by November 29, 2015, accompanied by a memorandum from FCI Allenwood staff, indicating that Petitioner was not at fault for missing his filing deadline. The rejection notice issued by the Administrative Remedy Coordinator at the Central Office further instructed Petitioner to resubmit his appeal to the Northeast Regional Office. (*Id.*)

Petitioner did not attempt any further administrative appeals for either Administrative Remedy Request Number 837708 or Administrative Remedy Request Number 842681. (Doc. 8 at ECF p. 9). Petitioner asserts that he was unable to successfully exhaust his administrative remedies because of the confusing nature of the BOP administrative appeals process and practices of prison staff that hampered his attempts to successfully file Administrative Remedy Requests. (Doc. 9 at ECF p. 2). Specifically, Petitioner alleges that prison staff and correctional counselors regularly delay providing inmates with the necessary forms to file Administrative Remedy Requests, typically provide inmates with the incorrect forms, provide improper instructions to inmates, and generally attempt to prevent inmates from filing administrative appeals. (*Id.*)

---

found and Petitioner eventually sent a second mailing to the Central Office after learning that the first had not been delivered successfully. Petitioner has not provided any documentary support for his assertion that he sent his appeal to the Central Office in January 2016 or that it was lost in the mail.

III.  *Discussion*

A.  *The Court Will Not Require Exhaustion of Administrative Remedies*

Respondent asserts that Petitioner may not seek relief in this Court because he has failed to exhaust his administrative remedies.  "Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241."  *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996).  Failure to exhaust, however, is an affirmative defense, and the burden of demonstrating that a prisoner has not exhausted his administrative remedies lies with the respondent.  See *Millhouse v. Warden Lewisburg USP*, 666 F. App'x 98, 100 n.2 (3d Cir. 2016)(nonprecedential)(citing *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002)(holding respondents must plead and prove exhaustion of administrative remedies as an affirmative defense).  Also, a district court has some discretion to excuse faulty exhaustion and reach the merits.  *See Almanzar v. Hollingsworth*, No. 15-CV-6244, 2017 WL 4390264, at *2 (D.N.J. Oct. 2, 2017).

We have decided not to dismiss this petition for failure to exhaust administrative remedies.  We find it significant that after Petitioner improperly submitted his request at the institutional level, he affirms that he submitted his appeal at the regional level using a BP-10 form, which is the proper form to be used at that level.  28 C.F.R. § 542.15(a).  The Administrative Remedy Coordinator at the Northeast Regional Level rejected Petitioner's appeal because it was allegedly not submitted using the proper form. (Doc. 1-1 at 5).  However, Respondent has not submitted as an exhibit the form that Petitioner allegedly used.  If Petitioner used the correct form, he could have exhausted his administrative remedies on his second try.  Given this factual issue, we will address the

petition on the merits.  *See Almanzar, supra,* 2017 WL 4390264, at *2 (when the petitioner submitted some documentation that he had filed a timely appeal to the Central Office, the court would look at his petition on the merits even though his appeal had been deemed untimely).

In other words, because Respondent bears the burden of proving exhaustion of administrative remedies as an affirmative defense, and we have our doubts that Respondent has met this burden, we will side with Petitioner on the exhaustion issue.

In any event, after consideration of the merits of the petition, Shaposhnikov does not qualify for the relief he seeks.

B. *There Is Some Evidence to Support the Finding of Guilt Because Inmates Have a Collective Responsibility to Keep Their Cells Free From Contraband*

Prisoners have a liberty interest in the good conduct time they accumulate while incarcerated.  *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).  Flowing from that liberty interest, federal prisoners have several due process rights in prison disciplinary proceedings that could result in the loss of GCT.  *Id.* at 563-70.  One of those rights is a prisoner's entitlement to a written statement issued by the fact finder, setting out the evidence relied upon and the reasons for that reliance.  *Id.* at 564-65.  When GCT is revoked, there must be "some evidence in the record" to support the decision.  *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985).[11]  The "some evidence" standard is a standard of review we must employ in deciding whether the disciplinary hearing satisfied due process rather than a burden of proof in the disciplinary proceeding.  *Denny v. Schultz*, 708 F.3d 140, 144 (3d Cir. 2013).

---

[11] BOP regulations also require that "[t]he DHO's decision will be based on some facts and, if there is conflicting evidence, on the greater weight of the evidence."  28 C.F.R. 541.8(f).

Here, Petitioner argues on the following grounds that there was insufficient evidence to find he had committed the charged offense.  First, the contraband was "found in a wall close to another inmate's bed," while Petitioner's bed was on the opposite side of the cell, far away."  (Doc. 1 at ECF p. 1).  Second, any of the approximately 400 inmates who are housed in the building containing Petitioner's cell have access to that cell and the location where the contraband was discovered.  (*Id.*)  Third, the principle of constructive possession as used in the prison context is vague and overreaching, and if the principle as applied in criminal proceedings were used, it would indicate he did not have constructive possession of the contraband.  Fourth, no investigation was done, no witnesses were interviewed, and the weapons were not checked for fingerprints.

In opposition, Respondent argues that the theory of constructive possession as applied in the prison context satisfies the "some evidence" standard.  Specifically, Respondent asserts that, "[e]ven without his admission to the misconduct, evidence of a weapon discovered in a cell satisfies the 'some evidence' standard based on a theory of constructive possession."  (Doc. 8 at ECF p. 13).  He cites in support *Reynolds v. Williamson*, 197 F. App'x 196, 199 (3d Cir. 2006)(nonprecedential); *White v. Kane*, 860 F. Supp. 1075, 1079 and n.5 (E.D. Pa. 1994); *Gebbia v. Holt*, No. 06-CV-2171, 2007 WL 1893721, at *3 (M.D. Pa. Jul. 2, 2007); and *Brown v. Recktenwald*, 550 F. App'x 96, 98 (3d Cir. 2013)(nonprecedential).

It is true that under a theory of constructive possession, "the discovery of contraband in a shared cell constitutes 'some evidence' of possession sufficient to uphold a prison disciplinary sanction against each inmate in the cell, including depriving that inmate of his or her liberty interest in good time credits."  *Denny*, 708 F.3d at 145.  And in

each of the cases Respondent cites, the courts found that constructive possession satisfied the some evidence standard for an inmate sharing a cell with another inmate. However, these cases involve far fewer inmates sharing a cell than the instant case. *Reynolds*, 197 F. App'x at 199 (constructive possession doctrine satisfies the "some evidence" standard for two inmates sharing a cell); *White*, 860 F. Supp. at 1079 n.5 (constructive possession doctrine applied to a single-celled inmate); *Gebbia,* 2007 WL 1893721, at *3 (M.D. Pa. 2007)(constructive possession doctrine applied to two inmates sharing a cell); *Brown,* 550 F. App'x at 98 (finding "some evidence" under constructive possession doctrine when six inmates shared a cell).

Here, contraband was discovered in a cell shared by twelve inmates.  In other words, at least eleven other inmates had access to the location where the contraband was discovered.[12]  If one takes a probability-based approach to constructive possession, Denny, 708 F.3d at 145, a 25% probability that contraband belonged to one inmate in a four-person cell may be considered some evidence.  *Id.* (citing *Hamilton v. O'Leary*, 976 F.2d 341, 345-46 (7th Cir. 1992)(holding that a 25% probability was some evidence)).   But here, given that we deal with twelve inmates, such an approach would mean that we would have to conclude that an 8.3% chance of being the inmate owning the contraband is some evidence.  That strikes us as too low and at least one court has decided that an 8.3% chance under the probability-based approach would not be some evidence.  *Cardenas v. Wigen*, 921 F. Supp. 286, 289 n.4 (E.D. Pa. 1996).

---

[12]   Shaposhnikov asserts in his petition that any of the approximately 400 inmates who were housed in the building containing Petitioner's cell had access to the cell and the location where the contraband was discovered.  We do not consider this assertion as it was not raised in the disciplinary proceedings.  *See Reynolds*, 197 F. App'x at 199-200; *Gebbia*, 2007 WL 1893721, at *7 (citing *Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992)).

We also bear in mind that the courts in *Reynolds* and *Brown* both noted that the constructive possession doctrine applies "where a small number of inmates are potentially guilty of the offense charged." *Reynolds*, 197 F. App'x at 199; *Brown*, 550 F. App'x at 98 (quoting *White*, *supra*, 860 F. Supp. at 1079 n.5).

However, there is an alternative approach to constructive possession aside from using probabilities -- collective responsibility. *Denny*, 708 F.3d at 145-46. As stated by the Third Circuit:

> The application of collective responsibility in the prison context has its foundation in BOP Program Statement 5270.07, *Inmate Discipline and Special Housing Units,* which provides that it is an inmate's responsibility to keep his or her area free of contraband. *See* 28 C.F.R. § 541.12 (2008). Although the BOP Program Statement does not define the term "area," a prisoner's area at a minimum includes the prisoner's cell as well as any other space accessible from within the cell. In a shared cell, all parts of the cell are equally accessible to each prisoner housed in the cell. Thus, each individual prisoner is responsible for keeping the entire cell free from contraband. Because each prisoner in a shared cell has an affirmative responsibility to keep the entire cell, and all other space accessible from within the cell, free from contraband, it follows that any contraband found within the cell is constructively possessed by each of the inmates housed in that cell. Thus, the mere discovery of contraband in a shared cell constitutes "some evidence" that each prisoner in that cell possessed the contraband.

*Id.* at 146.

In *Denny*, the Third Circuit accordingly held that, because the two inmates sharing the cell had an affirmative responsibility to keep their area free of contraband, there was some evidence to support the disciplinary charge. *Id.* at 146-47. It follows that when Petitioner was assigned to the cell where the contraband in question was discovered, and had an affirmative duty to keep the cell clear of contraband, the DHO's decision disallowing his GCT was based on "some evidence" of his guilt.

12

None of Petitioner's other due process claims have merit.  As noted, Petitioner contended that the contraband was "found in a wall close to another inmate's bed," while Petitioner's bed was on the opposite side of the cell, far away."  (Doc. 1 at ECF p. 1).  However, Petitioner was obligated to keep the entire cell free of contraband, so the contraband's location was irrelevant to a finding of guilt.  Petitioner also contended that the principle of constructive possession as used in the prison context is vague and overreaching, and if the principle as applied in the criminal context were used, it would indicate he did not have constructive possession of the contraband.  But in *Denny*, the Third Circuit rejected using in the prison disciplinary context the standard of constructive possession in criminal cases.  708 F.3d at 145.  Petitioner also argued that no investigation was done, no witnesses were interviewed, and the weapons were not checked for fingerprints.  However, the record shows that an investigation was done and Petitioner does not inform us what witnesses should have been interviewed.  As for checking for fingerprints, under a theory of collective responsibility, there was no need to check for fingerprints as Petitioner's guilt on the charge is based on his failure to keep the cell clear of contraband.  *See Almanzar*, 2017 WL 4390264, at *4 (checking for fingerprints was not necessary because the doctrine of constructive possession by way of collective responsibility indicated the inmate possessed the contraband bottle).  Under a theory of collective responsibility, it is immaterial whether Petitioner's fingerprints appeared on any of the weapons.

Finally, Petitioner complains that in the very dangerous prison environment, he cannot be expected to police other inmates.  (Doc. 9, ECF p. 1 ¶ 1).  The Third Circuit has responded to this position:

> We are not oblivious to the realities of prison life that might make it difficult or even dangerous for prisoners in shared cells to be affirmatively responsible for policing the illicit activities of their cellmates. Nonetheless, the Due Process Clause requires us to balance a prisoner's liberty interest in good time credits against the prison's interest in maintaining a safe and secure environment.

*Denny*, 708 F.3d at 147 (quoted case omitted).

*IV.    Conclusion*

Principally because there was some evidence that Petitioner violated BOP Code 108, we find that Petitioner's due process rights were not violated when the DHO disallowed his forty days' GCT. Accordingly, his petition for habeas relief under 28 U.S.C. § 2241 will be denied.

An appropriate order will issue. We will not issue a certificate of appealability as Petitioner has the right to appeal our order to the Third Circuit without a certificate. *See Burkey v. Marberry*, 556 F.3d 142, 146 (3d Cir. 2009).

<u>/s/William W. Caldwell</u>
William W. Caldwell
United States District Judge

Date: December  5, 2017